** E-filed on 7/29/05 **

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GRETCHEN HEINRICH, | Case Number C 04-02943 JF |
| Plaintiff, | ORDER[1] (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS |
| v. | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and KNIGHT-RIDDER, INC. LONG TERM DISABILITY PLAN, | |
| Defendants. | [Docket Nos. 17, 23] |

Plaintiff Gretchen Heinrich ("Heinrich") and Defendants The Prudential Insurance Company of America and Knight-Ridder, Inc. Long Term Disability Plan (collectively "Defendants") dispute whether Heinrich properly was denied long-term disability benefits. The parties have filed cross-motions for summary judgment. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on July 15, 2005. For the reasons set forth below, Heinrich's motion for summary judgment will be granted, Defendants' motion for summary judgment will be denied, and the case will be remanded to Defendants for determination of benefits in accordance with the findings and conclusions set

---

[1] This disposition is not designated for publication and may not be cited.

1  forth herein.

2  **I. BACKGROUND**

3  Heinrich, a former employee of Knight-Ridder, Inc. ("Knight-Ridder"), was a participant

4  in the Knight-Ridder, Inc. Long Term Disability Plan ("Plan").  The Plan offers long-term

5  disability benefits to employees through an insurance policy issued by The Prudential Insurance

6  Company of America ("Prudential").  Prudential also functions as the claims administrator.  This

7  action, brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"),

8  29 U.S.C. §§ 1001 *et seq*., arises out of Heinrich's allegation that Prudential improperly denied

9  her claim for long-term disability benefits.

10  Heinrich was employed by Knight-Ridder as an office systems manager responsible for

11  general maintenance of the computer network system.  *See* Silver Decl., Ex. 4.  Heinrich's last

12  day of work was August 7, 2002.  She stopped working due to stress, depression, and the effects

13  of fibromyalgia.  The American College of Rheumatology describes fibromyalgia as "a common

14  condition that is associated with widespread aching, stiffness and fatigue, and originates in

15  muscles and soft tissue."  Silver Decl., Ex. 23.  According to the Arthritis Foundation, other

16  symptoms include sleep disorders, irritable bowel syndrome, chronic headaches, and cognitive or

17  memory impairment.  *See* Silver Decl., Ex. 20.  Heinrich had been diagnosed with fibromyalgia

18  in 2000.

19  On February 23, 2003, Heinrich filed a claim for long-term disability benefits under the

20  Plan.  *See* Silver Decl., Ex. 2.  The Plan provides that "[y]ou are disabled when Prudential

21  determines that . . . you are unable to perform the ***material and substantial duties*** of your

22  ***regular occupation*** due to your ***sickness*** or ***injury***."  Silver Decl., Ex. A2 at 12.  "Material and

23  substantial duties" are defined as duties that "are normally required for the performance of your

24  regular occupation" and "cannot be reasonably omitted or modified."  *Id.*  "Regular occupation"

25  is defined as "the occupation you are routinely performing when your disability begins" and is

26  based on how the occupation "is normally performed instead of how the work tasks are

27  performed for a specific employer or at a specific location."  *Id.*  The Plan requires that the

28

2

1  claimant be "continuously disabled" for an "elimination period" of 180 days before she is eligible

2  to receive benefits. *Id.* at 13.

3      As part of her claim, Heinrich submitted, among other things, a medical report from her

4  primary care physician, Dr. Rakesh Chaudhary, M.D. ("Chaudhary"), dated February 28, 2003.

5  In this report, Chaudhary made a primary diagnosis of fibromyalgia and a secondary diagnosis of

6  depression. *See* Silver Decl., Ex. 8.  Chaudhary noted that Heinrich was experiencing "lots of

7  pain from fibromyalgia with severe sleep disturbance" and characterized Heinrich's functional

8  abilities as "sedentary."  *Id.*  In a follow-up report dated March 10, 2003, Chaudhary added that

9  Heinrich "cannot concentrate on work tasks due to severe sleep disturbance [and] depression."

10 Silver Decl., Ex. 9.  On May 1, 2003, Prudential Claim Manager Susan Williams ("Williams")

11 prepared a "SOAP Note" summarizing Heinrich's medical history as reported by her treating

12 physicians and analyzing her claim for benefits.  *See* Silver Decl., Ex. 11.  The "SOAP Note"

13 described Heinrich's condition from August 9, 2002, to January 16, 2003, including her disturbed

14 sleep patterns, and listed the prescription medications she was taking.  *See id.*  On May 6, 2003,

15 Williams prepared another "SOAP Note," in which she concluded that the medical information

16 in Heinrich's file "does not support continuous disability through [the elimination period] of

17 8/8/02 through 2/4/03 for depression or [fibromyalgia] flare."  *Id.*  Prudential denied Heinrich's

18 claim on May 13, 2003.  *See* Silver Decl., Ex. 12.  The denial letter stated that "the current

19 medical documentation in file [sic] does not support that the severity of your conditions rendered

20 you unable to perform the material and substantial duties of your regular occupation throughout

21 the elimination period" and that Heinrich "should have been able to perform the duties of [her]

22 regular occupation with reasonable self-accommodations or modifications during the elimination

23 period."  *Id.*  It addressed both Heinrich's fibromyalgia and her psychiatric conditions,

24 concluding that there was insufficient evidence to support Heinrich's claim for disability as a

25 result of either condition.

26      Heinrich appealed the denial of her claim on November 3, 2003.  *See* Hanna Decl., Ex. A

27 at PRU0339-63.  As part of her appeal, Heinrich submitted several additional reports regarding

28

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

her conditions.  Jeff Beeman ("Beeman"), a self-titled "vocational expert," interviewed Heinrich

on September 10, 2003.  *See* Silver Decl., Ex. 6.  Based on that interview, Heinrich's medical

record, and various occupational references, Beeman concluded that

> Ms. Heinrich's physical, mental and cognitive problems, including fatigue,
> weakness, insomnia, depression, severe pain, inability to do physical labor, and
> difficulty with concentration, presents [sic] an individual unable to perform the
> material and substantial duties of her regular occupation.  Ms. Heinrich is simply
> not able to sustain on a full time basis work activities at any exertional level with
> any reasonable continuity.  Based on the totality of medical records reviewed, Ms.
> Heinrich is not employable in her own occupation or in any occupation, at any
> skill or exertional level at this time.

*Id.* at 10.  Beeman characterized Heinrich's job as "high stress and physically demanding,"

requiring "high level sophisticated skills and physical demands along with high aptitudes."  *Id.* at

9.  In response, Prudential Claim Manager Thomas Virgilio ("Virgilio") prepared a "SOAP

Note" dated December 3, 2003, in which he concluded that Beeman's characterization of

Heinrich's job was accurate but distinguished what Heinrich actually did from how the

occupation normally is performed, noting that the latter is the relevant inquiry under the Plan.

*See* Silver Decl., Ex. 26.  By Virgilio's analysis, Heinrich's occupation necessitated only "light

work" in the areas of lifting, carrying, pushing, and pulling, and her actual physical activities in

"mov[ing] equipment, crawl[ing] under desks, etc. . . . would not be considered material and

substantial."  *Id.*

        Heinrich also was examined by Dr. Oscar Abeliuk, M.D. ("Abeliuk"), a neurologist, who

conducted a neurological consultation on September 11, 2003.  *See* Silver Decl., Ex. 13.  Abeliuk

diagnosed Heinrich with (1) chronic fibromyalgia syndrome according to the criteria established

by the American College of Rheumatology, (2) "chronic pain syndrome, sleep disturbance and

chronic spinal pain," and (3) a "history of significant depression and anxiety as well as other

psychological difficulties."  *Id.* at 9.  Abeliuk concluded that Heinrich had "significant residual

functional capacity problems . . . as documented not only on a subjective basis but also on her

clinical evaluation," noting that, "although at one point in the past she was able to work despite

her fibromyalgia, she has noted significant worsening," which is "true in many patients with

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

1    fibromyalgia, despite treatment." *Id.* at 10.  He also stated that "[a]ll of these significant residual

2    functional capacity difficulties . . . secondary to her fibromyalgia are clear-cut impairments for

3    her to return to [her] job." *Id.*

4         On September 17, 2003, Dr. L. Neena Madireddi, M.D. ("Madireddi"), a specialist in

5    physical medicine and rehabilitation, examined Heinrich and noted "multiple fibromyalgia tender

6    spots" and "active trigger points" throughout the body.  Silver Decl., Ex. 15 at 5-6.  Madireddi

7    also tested Heinrich's range of motion and evaluated her tenderness, sensitivity, and reflexes at

8    various points on the body.  Based on the physical examination and a review of Heinrich's

9    medical record, Madireddi described her "impression" of fibromyalgia, lumbar strain, carpal

10   tunnel syndrome, migraine headaches, and "history of attention deficit activity disorder." *Id.* at

11   7.  Madireddi concluded that "Ms. Heinrich can not [sic] return to her prior line of work as an

12   office system manager," that "she cannot concentrate on the tasks at hand [and] will be

13   constantly bothered by such severe pain that she cannot work in a typical work day," and that

14   "she is incapable of even a low stress job." *Id.*

15        On October 14, 2003, Dr. Alfred Scopp, Ph.D ("Scopp"), a licensed psychologist,

16   prepared a neuropsychological report on Heinrich based on four examinations of her verbal and

17   cognitive abilities.  *See* Silver Decl., Ex. 17.  Scopp conducted a number of neuropsychological

18   tests to evaluate Heinrich's verbal skills, recall ability, speech and language functioning, and

19   motor functioning, as well as to test whether Heinrich was malingering.  The tests revealed

20   impairment in memory and recall ability.  Scopp stated that "there is clear evidence of major

21   verbal impairment on the Verbal Memory Scale of the Memory Assessment Scale. . . . [H]er

22   Verbal Memory is . . . at the 6th percentile." *Id.* at 8.  Thus, Scopp concluded that "it would be

23   impossible for her to assimilate and remember new technical information required of her job . . . .

24   She would also have difficulty understanding her own notes of things to do, remember,

25   understand and respond to e-mail requests from other employees, of which she receives many per

26   day." *Id.* at 9.

27        Finally, in a letter dated October 20, 2003, Chaudhary reiterated that the "manifestations

28

5

1  [of Heinrich's fibromyalgia] . . . make it impossible for her to function in her usual job.  She is

2  unable to concentrate on complex tasks . . . [and] her severe sleep disturbance precludes her

3  ability to stay on a work schedule of any type."  Silver Decl., Ex. 18.

4       In processing Heinrich's appeal, Prudential arranged for Dr. Douglas Martin, M.D.

5  ("Martin"), who is board certified in occupational and environmental medicine, and Dr. Carroll

6  Brodsky, M.D. ("Brodsky"), who is board certified in psychiatry, to evaluate Heinrich's claim.

7  *See* Silver Decl., Exs. 28, 29, 39.  Based upon a review of Heinrich's record, Martin concluded

8  that "the medical documentation presented does not support an ongoing claim for long-term

9  disability as a result of fibromyalgia."  Silver Decl., Ex. 28 at 8.  He explained that

10      [t]here is very little if any objective information contained within the medical
        report presented that shows any effect with respect to function from the standpoint
11      of range of motion, strength, or cardiovascular problems.  Rather, what I see
        throughout the medical records presented are claims of subjective difficulties such
12      as pain, anxiety, difficulty coping, difficulty with stress at the job, and difficulty
        sleeping.

13

14  *Id.*  Martin also objected to the conclusions drawn by Heinrich's physicians on the grounds that

15  (1) Abeliuk's report revealed "no recorded abnormality with respect to weakness of the

16  musculature" and "seems to mix the terms 'tender' and 'trigger' when he talks about girdle

17  musculature as well as other muscles identified," *id.* at 5, (2) Madireddi's report did not list

18  specific degree values associated with range of motion but rather described the range of motion

19  in relation to "what is 'expected of normal,'" *id.* at 6, (3) Madireddi used an "invalid test" to

20  evaluate muscular strength, *id.*, (4) Madireddi's report did not "address the typical 18 tender

21  points that the American College of Rheumatology considers in this diagnosis," *id.*, (5) Scopp

22  failed to administer a particular neuropsychological test and instead used a "relatively poor test,"

23  *id.*, and (6) the reports of Heinrich's psychologists or psychiatrists were "somewhat difficult to

24  interpret," due in part to "handwriting quality," *id.*  Martin expressed his belief that Heinrich

25  "would have much more of a significant psychological or psychiatric problem than she would

26  with the fibromyalgia."  *Id.* at 9.  He also acknowledged an "increased association" between

27  fibromyalgia and "psychiatric difficulties such as depression and anxiety" without concluding

28

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

1   that there is a causal relationship between the two.  *Id.*  Finally, he questioned whether Heinrich's

2   treatment had been adequate or appropriate and suggested that having Heinrich "resume normal

3   activities including that of work" would constitute treatment that is "just as important as any

4   medication or rehabilitation program" for fibromyalgia.  *Id.*

5          Brodsky agreed with Martin's conclusion that "fibromyalgia does not explain all of

6   [Heinrich's] symptoms, the pattern of her symptoms, the duration of her symptoms, or the

7   distribution of her physical symptoms."  Silver Decl., Ex. 29 at 3.  Brodsky stated that "there is

8   no evidence that [Heinrich] has a physical disorder that is producing the level of disability that

9   she describes."  *Id.*  Further, Brodsky concluded that, "[f]rom a psychiatric standpoint alone,

10  except for her belief that she is unable to function and would be unable to function, there is no

11  evidence that she would be unable to do the job that she did formerly."  *Id.*  Brodsky suggested

12  that Heinrich may have an aversion to returning to her job because of a stressful relationship with

13  her former supervisor and stated that there also may be "some disorganizing or obtunding

14  effects" from Heinrich's medication.  *Id.* at 4.

15         In response, Madireddi and Scopp prepared reports contesting the accuracy of Martin's

16  and Brodsky's conclusions and reaffirming their respective opinions on Heinrich's condition.

17  *See* Silver Decl., Exs. 30, 33.  Abeliuk issued a similar report with respect to Martin's

18  conclusions.  *See* Silver Decl., Ex. 31.  On February 5, 2004, Dr. Charles Casella, M.D.

19  ("Casella"), a specialist in psychiatry and neurology, performed a psychiatric evaluation of

20  Heinrich and concluded that she is "disabled for competitive employment by a combination of

21  her psychiatric and physical disorders" and that "[h]er fibromyalgia disorder has exacerbated her

22  preexistent depression."  Silver Decl., Ex. 32.  Casella noted, however, that Heinrich's

23  "depression in and of itself would likely not be work-disabling."  *Id.*  He also refuted Brodsky's

24  conclusions, remarking that "there is, in fact, a wealth of data which indicates that [Heinrich]

25  does have multiple physical disorders" and that "her emotional and psychiatric disorders . . .

26  interact with her physical disorders in a vicious cycle."  *Id.*

27         On March 14, 2004, Heinrich was awarded disability benefits from the Social Security

28

                                                7

1   Administration ("SSA").  *See* Silver Decl., Ex. 34.  The award letter states that the SSA "found

2   that [Heinrich] became disabled under [their] rules on August 8, 2002," *id.*, the day after her last

3   day of work.  However, there is no evidence in the record as to the SSA's guidelines for

4   determining disability or the documents that the SSA relied upon in reaching its conclusions.

5        In a "SOAP Note" dated April 27, 2004, Prudential Claim Manager Jill Fallon, M.D.

6   ("Fallon") concluded, based on a review of the medical record, that Heinrich's condition was not

7   disabling.  Fallon agreed with Martin's conclusion that "there is little if any objective evidence"

8   to support a finding that Heinrich was incapable of performing "a light or medium duty job."

9   Silver Decl., Ex. 35.  Fallon further stated that Heinrich "appears to have personality traits

10  resulting in strong orientation toward physical illnesses and somatic explanations of her

11  difficulties with pain, weakness and fatigue beyond medical expectations for her current physical

12  status" but that "these [difficulties] are not disabling."  *Id.*  Fallon suggested that external

13  stressors, such as difficulty with a new supervisor, may have prompted Heinrich's physical

14  complaints, and she noted that Heinrich had worked for years in spite of many of her symptoms.

15  *See id.*

16       On May 24, 2004, Prudential denied Heinrich's appeal.  *See* Silver Decl., Ex. 39.  The

17  denial letter concluded, based on the findings in the reports of Martin, Brodsky, and Fallon, that

18  the

19          [m]edical documentation reviewed does not support that there has been a change
20          in Ms. Heinrich's long-standing condition(s) with which she has worked in the
            past.  Professional opinions regarding Ms. Heinrich's disability status that
21          [Heinrich has] submitted on appeal are based on her self-reported symptoms and
            not on objective findings, such as decreased range of motion and/or strength or
22          significant findings of cognitive dysfunction.

23  *Id.*  The denial letter also summarized the findings of the various medical reports submitted by

24  Heinrich and referred Heinrich to her copies of Martin's and Brodsky's reports for "more

25  detailed information."  *Id.*  Prudential primarily relied on Martin's report to conclude that

26  Heinrich was not disabled from a physical standpoint and on Brodsky's report to conclude that

27  Heinrich was not disabled from a psychiatric standpoint.

28

8

## II. LEGAL STANDARDS

**A.    Standard for Summary Judgment**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. There is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the party moving for summary judgment would bear the burden of proof at trial, it has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. The nonmoving party may not rely on the mere allegations or denials in its pleading in order to preclude summary judgment. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Summary judgment thus is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS (JFEX2)

1  the material issue in its favor.  *Anderson*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132,

2  1134-36 (9th Cir. 1991).

3  **B.      Standard of Review for Denial of Benefits**

4        A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed under a de

5  novo standard unless the benefit plan gives the administrator discretionary authority to determine

6  eligibility for benefits or to construe the terms of the plan.  *Firestone Tire & Rubber Co. v.*

7  *Bruch*, 489 U.S. 101, 115 (1989).  The default is that the administrator has no discretion, and the

8  administrator has to show that the plan gives it discretionary authority in order to get any judicial

9  deference to its decision.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999).

10  The presumption of de novo review can be overcome only when a plan's reservation of

11  discretion is unambiguous.  *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000).

12  Where the benefit plan does give the administrator such discretion, a deferential standard of

13  review is appropriate.  *Firestone Tire & Rubber Co.*, 489 U.S. at 111.  The deferential standard

14  of review is referred to interchangeably as "abuse of discretion" or "arbitrary and capricious,"

15  both of which have the same meaning in this context.  *Hensley v. Northwest Permanente P.C.*

16  *Ret. Plan & Trust*, 258 F.3d 986, 994 n.4 (9th Cir. 2001).

17                          **III. DISCUSSION**

18        To determine the appropriate standard of review, the Court must determine whether the

19  Plan grants Prudential discretionary authority to determine eligibility for benefits or to construe

20  the terms of the plan.  *See Firestone Tire & Rubber Co.*, 489 U.S. at 109.  The policy at issue

21  contains the following language: "You are disabled when Prudential determines that . . . you are

22  unable to perform the ***material and substantial duties*** of your ***regular occupation***."  Silver

23  Decl., Ex. A2 at 12.  Prudential argues that the phrase "You are disabled when Prudential

24  determines that" constitutes a grant of discretionary authority sufficient to trigger the abuse-of-

25  discretion standard.  It relies on two Ninth Circuit cases to argue that the power to "determine" or

26  "make a determination" regarding eligibility for benefits constitutes a grant of discretionary

27  authority.  *See Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324 (9th Cir. 1992); *Eley v. Boeing Co.*,

28

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

945 F.2d 276, 278 (9th Cir. 1991).  However, both of these cases pre-date *Kearney v. Standard Insurance Co.*, in which the Ninth Circuit clarified that the grant of discretion must be unambiguous in order to trigger the abuse-of-discretion standard.  *See Kearney*, 175 F.3d at 1089.

Since *Kearney*, the Ninth Circuit has held that an "allocation of decision-making authority . . . is not, without more, a grant of discretionary authority in making those decisions." *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1112-13 (9th Cir. 2001).  The *Ingram* court emphasized that it is not difficult for insurance companies to use unambiguous language in order to retain discretionary authority if they wish to do so and that the absence of such explicit language consequently should trigger de novo review.  *See id.* at 1114.  Thus, in *Ingram*, the language "the management and control of the operation and administration of claims procedures under the Plan, including the review and payment or denial of claims . . . shall be vested in the carrier" was found not to grant unambiguous discretionary authority but merely to "make[] clear that [the carrier], rather than the employer or some other party, makes all administrative decisions to grant or deny claims." *Id.* at 1112.  In the instant case, this Court similarly concludes that the Plan language does not constitute an unambiguous conferral of discretionary authority on Prudential,[2] and it notes that other district courts, ruling on plan language identical to the language in the instant case, have reached the same conclusion.  *See Flores v. The Prudential Ins. Co.*, No. C-03-5589 MMC, 2004 U.S. Dist. LEXIS 19492, at *16 (N.D. Cal. Sept. 16, 2004); *Urso v. Prudential Ins. Co. of Am.*, No. 03-024-JD, 2004 U.S. Dist. LEXIS 23930, at *10 (D.N.H. Nov. 23, 2004).  Accordingly, the Court will review the denial of Heinrich's claim de novo.

Reviewing the administrative record de novo, the Court must determine whether Heinrich

---

[2] The Plan also states that the claimant may be required to send proof of continuing disability "satisfactory to Prudential."  Silver Decl., Ex. A2.  Because Prudential does not argue that such language constitutes a conferral of discretionary authority, the Court does not address this language.

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

1   was disabled under the terms of the Plan during the elimination period, thus entitling her to

2   benefits.  It is undisputed that Heinrich has fibromyalgia.  The parties dispute only whether

3   Heinrich's fibromyalgia and psychiatric conditions rendered her disabled under the terms of the

4   Plan.  The record contains medical reports from Heinrich's numerous physicians, all of whom,

5   following a physical or psychiatric examination, have diagnosed her with fibromyalgia and/or

6   concluded that her condition rendered her unfit to work.  Among other things, Heinrich's

7   physicians specifically have concluded that the chronic pain and severe sleep disturbance

8   associated with fibromyalgia have prevented Heinrich from being able to function in a normal

9   work environment or to keep a normal work schedule.  In concluding otherwise, Prudential

10  primarily has relied on the report of its own reviewing physician, Martin, whose main contention

11  is that there is no objective evidence in Heinrich's file to substantiate the alleged severity of her

12  condition—only Heinrich's subjective reports of her symptoms.  Although Martin's opinion is

13  not unreasonable in and of itself, the Court does not find it persuasive in light of the record as a

14  whole.

15      First, although Prudential bases its denial of benefits principally on a lack of objective

16  evidence of the severity of Heinrich's fibromyalgia claim, the terms of the Plan do not

17  specifically require "objective" medical evidence as proof of disability.  Second, even if the Plan

18  contained such a requirement, the nature of fibromyalgia—a condition that manifests as what the

19  Arthritis Foundation describes as "generalized muscular pain," Silver Decl., Ex. 20—is such that

20  neither its presence nor its severity can be verified by purely objective laboratory tests.  The

21  American College of Rheumatology states that "[d]iagnosis is based on the patient's description

22  of chronic widespread pain and the finding of tender points at specific locations by a physician"

23  and that "[t]here are no blood or x-ray tests that are abnormal in fibromyalgia."  Silver Decl., Ex.

24  23.  Yet, despite the subjectivity inherent in diagnosing fibromyalgia, which requires patients to

25  report their own sensations of pain and tenderness, courts have held that claimants were entitled

26  to disability benefits due to impaired functioning resulting from fibromyalgia.  *See, e.g., Lang v.*

27  *Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 799-800 (9th

28

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

1  Cir. 1997); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.2d 914, 919 (7th

2  Cir. 2003); *Ellis v. Egghead Software Short-Term & Long-Term Disability Plans*, 64 F. Supp. 2d

3  986, 993-94 (E.D. Wa. 1999).

4       Heinrich's examining physicians noted the presence of these tender points, as well as

5  Heinrich's complaints of other fibromyalgia-related symptoms, and thus appear to have had a

6  medically sound basis for their diagnoses and conclusions.  In opposition to these findings,

7  Prudential's physicians primarily asserted that the severity of Heinrich's condition was

8  substantiated only by self-reported symptoms rather than by objective evidence.  However, the

9  fact that Heinrich's physicians could not use a completely objective test to evaluate the severity

10  of her fibromyalgia does not undermine their considered medical opinions, based on their in-

11  person examinations, that her condition rendered her incapable of performing her occupation.

12  Moreover, Martin's objections to the adequacy of some of the other diagnostic techniques used

13  by Heinrich's physicians are insufficient to negate the conclusions drawn by Heinrich's multiple

14  examining physicians, who reaffirmed their medical opinions in response to the reports of Martin

15  and Brodsky.  Of particular significance is the fact that Prudential's physicians never examined

16  Heinrich or even spoke to Heinrich's physicians.  Martin, Brodsky, and Fallon appear to have

17  concluded that Heinrich was not disabled based only upon a review of the reports by Heinrich's

18  physicians.  Although "plan administrators are not obliged to accord special deference to the

19  opinions of treating physicians," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825

20  (2003), the failure of Prudential's physicians to perform their own examinations of Heinrich

21  entitles their opinions to less weight, because fibromyalgia produces symptoms that must be

22  reported by the patient to the physician and that can be evaluated more fully through an actual

23  examination than by a mere review of a patient's medical record.

24       In addition to asserting that there is a lack of objective evidence of disability, Prudential

25  argues that Heinrich's ability to work for several years after being diagnosed with fibromyalgia

26  demonstrates that her condition was not disabling enough to merit disability benefits.  However,

27  there is sufficient evidence in the record—specifically, the reports of Chaudhary and

28

13

1   Abeliuk—indicating that Heinrich's condition worsened around the time she ceased working.

2   Moreover, a "disabled person should not be punished for heroic efforts to work by being held to

3   have forfeited his entitlement to disability benefits should he stop working."  *Hawkins*, 326 F.3d

4   at 918.

5       Finally, in the process of arguing about whether Heinrich was able "to perform the

6   ***material and substantial duties*** of [her] ***regular occupation***," Silver Decl., Ex. A2 at 12, the

7   parties dispute the appropriate characterization of Heinrich's occupation.  Based on Beeman's

8   report, Heinrich argues that her position at Knight-Ridder was a hybrid position that

9   encompassed the responsibilities of a number of occupations as described in various occupation

10  resource handbooks.  *See* Silver Decl., Ex. 6 at 7.  Beeman concluded that Heinrich's position

11  was best classified as "medium exertional," occasionally rising to "heavy exertional."  *Id.*

12  Prudential's claim manager, Virgilio, acknowledged the accuracy of Beeman's analysis of the

13  character of the tasks actually performed by Heinrich but asserted that Heinrich's occupation, as

14  normally performed in the market rather than for Knight-Ridder specifically, should be classified

15  as being in the "light work" range.  Silver Decl., Ex. 26.  This dispute need not be resolved by the

16  Court for present purposes, as the reports from Heinrich's physicians appear to conclude that she

17  was incapable of performing any duties of her occupation during the elimination period and thus

18  was disabled under the terms of the Plan, regardless of the specific exertion level required by a

19  given task.  *See* Silver Decl., Exs. 13-19.

20      For the foregoing reasons, the Court concludes, based on a de novo review of the

21  evidence in the administrative record, that Heinrich was disabled under the terms of the Plan for

22  the duration of the elimination period and was entitled to disability benefits.  The case will be

23  remanded to Prudential for a determination of the scope of benefits owed to Heinrich in light of

24  this conclusion.  As the Court's review is limited to decisions actually made by

25  Prudential—specifically, its conclusion that Heinrich was not disabled during the elimination

26  period—the Court will not address the parties' arguments regarding potential limitations on the

27

28

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)

1  length of time Heinrich can receive benefits.[3]  Such matters properly should be determined by

2  Prudential in the first instance, and Heinrich retains the right to challenge Prudential's decision

3  administratively and, after exhausting her administrative remedies, through the courts.

4  Defendants shall determine the scope of benefits owed to Heinrich within ninety days of the date

5  of this Order, which is the same amount of time provided for a plan administrator to notify a

6  claimant of a benefits determination.  *See* 29 C.F.R. § 2560.503-1(f)(1).

7       At the hearing on the instant motions, Heinrich's counsel requested that, should Heinrich

8  prevail on summary judgment, the time to file a motion for attorney's fees be extended to thirty

9  days.  A motion for attorney's fees normally must be filed within fourteen days of entry of

10 judgment, though the time may be extended either by stipulation pursuant to Civil Local Rule 6-2

11 or by motion pursuant to Civil Local Rule 6-3.  Civil L.R. 54-6(a).  The Court will act on the

12 request by Heinrich's counsel upon receipt of one of the aforementioned documents.

13                                    **IV. ORDER**

14      Good cause therefore appearing, IT IS HEREBY ORDERED that Heinrich's motion for

15 summary judgment is GRANTED, Defendants' motion for summary judgment is DENIED, and

16 the instant case is remanded for determination of benefits consistent with the findings and

17 conclusions set forth herein.

18

19

20 DATED: July 29, 2005

21

22                                    /s/ electronic signature authorized
                                     JEREMY FOGEL
23                                    United States District Judge

24

25

26 ───────────────

27    [3] For example, the Plan provides that "[t]he limited pay period for self-reported symptoms
   and mental illness combined is 24 months during your lifetime," Silver Decl., Ex. A2 at 21, and
28 it gives Prudential the right to request proof of continuing disability, *id.* at 25.

1   This Order has been served upon the following persons:

2   Rebecca Labat Crosby          crosbyr@wemed.com

3   Beth A. Fruechtenicht          Fruechtenichtb@wemed.com

4   Melvyn D. Silver              MDSRST@cs.com

5   Ruth Silver Taube
    Law Offices of Silver & Taube
6   300 South First St., Suite 205
    San Jose, CA 95113

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 04-02943 JF
ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING CASE FOR DETERMINATION OF BENEFITS
(JFEX2)